UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSHUA S. DELP,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security Administration,

    Defendant.

No. CV-11-00336-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 17, and Defendant's Motion for Summary Judgment, ECF No. 19. The motions were heard without oral argument. Plaintiff is represented by Donald C. Bell. Defendant is represented by Assistant United States Attorney Pam DeRusha and Special Assistant United States Attorney Alexess D. Rea.

**I.    Jurisdiction**

On June 10, 2009, Plaintiff Joshua S. Delp filed a a Title XVI application for Supplemental Social Security Income (SSI). Plaintiff alleges that he has been

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 1**

disabled since April 30, 2007. His application was denied initially on June 10, 2009, and again on reconsideration on November 28, 2009. A timely request for a hearing was made. On February 1, 2011, Plaintiff appeared in Wenatchee, Washington before Administrative Law Judge (ALJ) James W. Sherry. Daniel R. McKinney, Sr., vocational expert, and Kimberly Davis, Plaintiff's fiancée, also appeared at the hearing. Plaintiff was represented by attorney Donald C. Bell.

The ALJ found that Plaintiff was not disabled since April 30, 2007, the date the alleged disability began. Plaintiff timely requested review by the Appeals Council, which was denied on August 23, 2011. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. § 405(h). Plaintiff timely filed an appeal with the U.S. District Court for the Eastern District of Washington on September 12, 2011. The instant matter is before the district court pursuant to 42 U.S.C § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 2**

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the ALJ proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 3**

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel,* 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id.* At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan,* 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec. of Health & Human Servs.,* 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006).

///

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 4**

## IV. Statement of Facts

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here. At the time of the hearing on February 1, 2011, Plaintiff was 34 years old and living with his significant other, Kimberly Davis. (Tr. 37.) He has an eleventh-grade education with no GED (Tr. 38), and has past relevant work experience as an industrial cleaner. (Tr. 59-60) Plaintiff is separated with two young children. (Tr. 37.) His oldest son visits every other weekend. (Tr. 38.) He is able to feed and walk his service dog. (Tr. 127.)

Plaintiff testified of pain in his left shoulder, stomach problems, beginning onset arthritis, muscle spasms, pseudo seizures, constant nausea, and heartburn. (Tr. 41-43.) He reported he is afraid to go too far from his couch or car for fear of having a pseudo seizure. (Tr. 53.) Plaintiff also testified he had psychological problems that included Post Traumatic Stress Disorder (PTSD) and/or a Conversion Disorder, severe anxiety and panic, and depression. (Tr. 45.) He believes he was molested as a child by a church bus driver as part of the Wenatchee Sex Ring scandal, although he does not have any specific recollection of the abuse. Rather, he and his girlfriend have tape-recorded his outbursts during his seizures and have pieced together that he had been abused as a child. (Tr. 582-83.)

During a typical day, Plaintiff spends his time sitting on the couch, playing his saxophone, and taking care of his dog. He helps out with the household chores when he can.

## V. The ALJ's Findings

At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June, 10, 2009, the alleged onset date. (Tr. 12.)

At **step two**, the ALJ found Plaintiff had the following severe impairments: headaches; pseudo seizures; thoracic degenerative disk disease; lumbar scoliosis;

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 5**

left knee degenerative joint disease; left shoulder instability with subluxation; major depressive disorder; posttraumatic stress disorder (PTSD); substance abuse; and anxiety disorder with panic attacks. (Tr. 12.)

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (Tr. 12.) As to the impairments, the ALJ considered whether Plaintiff's spinal impairments met a listing for 1.04 – *Disorders of the Spine*, and determined they did not because there was no evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight leg raising test. (Tr. 12.) Nor is there evidence of spinal arachnoiditis or lumbar spinal stenosis.

The ALJ also considered whether Plaintiff's shoulder and knee impairments met a listing for 1.02A – *Major Dysfunction of Joints*. The ALJ determined they did not because the evidence did not show Plaintiff has an extreme limitation in his ability to perform fine and gross movements. (Tr. 12.) In fact, the ALJ determined Plaintiff is capable of sustaining functions such as reaching, pushing, pulling, grasping, and fingering in order to carry out activities of daily living. *Id*. In regards to the Plaintiff's knee impairments, the ALJ also determined there is no evidence the claimant is incapable of sustaining a reasonable a walking pace needed to carry out activities of daily living. *Id*.

Further, the ALJ considered whether Plaintiff's pseudo seizure impairment met any listing. (Tr. 13.) The ALJ found that no listing corresponded exactly with this condition, but decided the epilepsy Listings under 11.02 and 11.03 was the most analogous to Plaintiff's pseudo seizure impairment. *Id.* After review, the ALJ found that the evidence does not establish the requirements for either of these Listings. *Id.* The ALJ also found there is not a specific Listing for headaches and

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 6**

that Plaintiff's headaches do not medically equal any relevant Listing requirement, in particular under 11.00 – *Neurologic. Id.*

Finally, the ALJ considered whether Plaintiff's mental impairments met or equaled the criteria of listings 12.04, 12.06, and 12.09, and determined they do not because the mental impairments did not result in at least two "marked" limitations or difficulties. (Tr. 13-14.) The ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and zero episodes of decompensation of extended duration. *Id.* The ALJ also found the evidence failed to establish the presence of the "paragraph C" criteria. *Id.*

At **step four**, The ALJ found that Plaintiff has the residual functional capacity[2] (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c).[3] His push/pull abilities of the upper extremities are unlimited within the lifting restrictions, he can never climb ladders, ropes, or scaffolds; he can occasionally climb stairs or ramps; he should avoid exposure to extreme cold, wetness, humidity, excessive vibration, and hazards such as unprotected heights; he is

---

[2] "RFC is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments. It is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities. . . RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis: i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR96-6P.

[3] (c) Medium Work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 7**

capable of simple, routine, and repetitive tasks as well as some well learned detailed tasks; he can adjust to some changes in a work setting periodically; he would work best away from the general public; and he should have superficial contact with coworkers and occasional supervision. (Tr. 14.) Based on Plaintiff's RFC, the ALJ found Plaintiff capable of performing his past relevant work as an industrial cleaner. (Tr. 22.)

The ALJ proceeded to **step five** in the alternative. He considered Plaintiff's age, education, work experience, and residual functional capacity and found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. However, the ALJ did not list, nor did he have the VE list, specific jobs that Plaintiff can perform. (Tr. 23-24.)

## VI. Issues for Review

Plaintiff presents the following issues with respect to the ALJ's findings:

1. The ALJ erred in rejecting opinions of Plaintiff's treating and examining doctors.

2. The ALJ erred in rejecting Plaintiff's subjective complaints of pain.

3. The ALJ erred finding that Plaintiff did not meet or equal an Epilepsy listed impairment or a Psychological listed impairment.

4. The ALJ failed to give specific germane reasons for rejecting the testimony of Plaintiff's fiancée.

5. The ALJ inaccurately assessed Plaintiff's RFC rendering the step four and five analyses erroneous.

## VII. Discussion

### A. Evaluation of Treating and Examining Doctors

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive,

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 8**

"questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir.1989).

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear" and "convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ can satisfy this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.2d 1035, 1041 (9th Cir. 2008).

Historically, the courts have recognized conflicting medical evidence, the

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 9**

absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific and legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec. of Health and Human Servs.*, 44 F.3d 1453, 1463–64 (9th Cir. 1995). The ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes*, 881 F.2d at 751. If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002) (discounting physical capacity evaluation that relied on subjective information from claimant, whom ALJ found lacked credibility and exaggerated symptoms).

### 1. Ashleigh Keyser, M.D.

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Keyser, his treating physician, by failing to "provide adequate reasons for rejecting these assessments." In an evaluation completed by Dr. Keyser on October 11, 2007, she stated Plaintiff's ability to work was unpredictable during spells of abdominal pain and convulsions. (Tr. 597.) Dr. Keyser also noted in her evaluation that Plaintiff had been to the emergency room 49 times in the past ten years. (Tr. 598.) In rejecting Dr. Keyser's opinions, the ALJ stated that he afforded little weight to this opinion because it was inconsistent with her other parts of the evaluation and other medical evidence and was unsupported by the evidence. He also noted that Dr. Keyser was an internist not specially trained to give an opinion as to the effects of pseudo seizures. (Tr. 21.) Moreover, the ALJ stated that Dr. Keyser's findings are not consistent "with the normal EEG findings and the claimant's lack of ongoing treatment history for his symptoms of pseudo seizures." *Id.*

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 10**

1   Here, the ALJ's rejection of Dr. Keyser's opinions need only be supported
2   by "specific and legitimate" reasons because both opinions were contradicted by
3   other medical evidence. (Tr. 188-92, 323, 327, 331-34, 405-08, 476.); *see Lester*,
4   81 F.3d at 830-31. When rejecting Dr. Keyser's opinion, the ALJ provided three
5   reasons: (1) inconsistency with her own findings; (2) lack of support by the
6   evidence, and (3) Dr. Keyser's lack of training in the area of pseudo seizures. (Tr.
7   21) These are "specific and legitimate" reasons for rejecting an opinion. *See, e.g.,*
8   *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (rejecting the opinions of a
9   physician whose statements were internally inconsistent); *Morgan*, 169 F.3d at
10  600; *Batson*, 359 F. 3d at 1195 (noting the ALJ may discredit a physicians' opinion
11  that is unsupported by the record as a whole).

12  The ALJ found inconsistencies with Dr. Keyser's own findings because
13  "[s]uch limitations are not consistent with the normal EEG findings and the
14  claimant's lack of ongoing treatment history for his symptoms of pseudo seizures."
15  (Tr. 21.) The ALJ found a lack of support by the evidence for Dr. Keyser's
16  findings because there is no evidence that Plaintiff's condition has gotten worse
17  since 1997, yet he was gainfully employed after that date. *Id.*

18  The ALJ did not err in rejecting the opinion of Dr. Keyser.

19      **2.**    **James Goodwin, Psy. D.**

20  Plaintiff also contends the ALJ did not properly consider the opinions of Dr.
21  Goodwin, his examining psychologist. In making his decision, the ALJ referred to
22  four evaluations of Plaintiff that Dr. Goodwin conducted in November 2007,
23  February 2008, August 2008, and January 2009. (Tr. 21-22, 28-64.)

24  The November 2007 and February 2008 opinions indicated Plaintiff suffered
25  moderate to severe social limitations. (Tr. 252, 261.) The ALJ gave these opinions
26  little weight, however, because otherwise Plaintiff "had a relatively normal mental
27  health status evaluation." (Tr. 22.) Moreover, the ALJ gave the January 2009

28  **ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 11**

opinion little weight because it was not consistent with the evidence of record and conflicted with Dr. Goodwin's evaluation of Plaintiff in August 2008. (Tr. 21.) In the January 2009 opinion, Dr. Goodwin gave Plaintiff a Global Assessment of Functioning rating of 44.[4] (Tr. 21, 232) The ALJ rejected this opinion, however, because Plaintiff's testimony indicates he has adequate social skills. (Tr. 21, 52.) The ALJ gave the most weight to Dr. Goodwin's August 2008 opinion because it "indicated [Plaintiff] had no more than moderate limitations in social functioning" and "no significant changes in [Plaintiff's] level of functioning" occurred between the opinions. (Tr. 21-22.) The ALJ also rejected Dr. Goodwin's opinions because he "did not indicate [whether] the limitations provided included substance abuse" and at the time of the examinations Plaintiff was using illicit drugs. (Tr. 22.) Finally, the ALJ stated that Dr. Goodwin failed to "perform any clinical tests beyond the mental status examination." *Id.*

Instead of relying on Dr. Goodwin's opinions, the ALJ gave significant weight to the Mental Residual Functional Capacity completed by the state agency consultant and the psychological evaluation completed by Caitlin Newman, M.S. in 2009. (Tr. 21.) The state agency consultant opined that Plaintiff would be able to function in a work environment. (Tr. 407.) Ms. Newman opined Plaintiff had (1) no cognitive or social limitations except during random panic attacks, (2) no problems taking care of his 7-year-old son, and (3) no history of problems getting along with others. (Tr. 21; 191-92.) Also, Ms. Newman opined that anti-anxiety

---

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IV–TR")).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 12**

medication would enable Plaintiff to work. (Tr. 192.) In 2009, Dr. Rickard recommended that Plaintiff return to work and start getting back into his normal routine. (Tr. 327.) She discussed with him the possibility of malingering. (Tr. 327.) In his initial assessment in 2010 by Tara O'Connor, ARNP, she noted that some aspects of his reported medical history were inconsistent with prior history or vague. Moreover, when she told Plaintiff that she would not prescribe him benzodiazepine, Plaintiff's fiancée became agitated and stormed out of the office slamming the door behind her. (Tr. 583.)

Again, as Dr. Goodwin's opinions were contradicted by other medical evidence, the ALJ needed only provide specific and legitimate reasons to reject the opinions. *Lester*, 81 F.3d at 830-31. The Court finds the ALJ did not err because ALJ's stated reasons for rejecting Dr. Goodwin's opinions were specific and legitimate.

### 3. Dana Wolf, M.S., LMHC

Next, Plaintiff contends the ALJ did not properly consider a letter from Dana Wolf, his therapist, dated April 29, 2010. In the letter, Ms. Wolf stated, "After reviewing [Plaintiff's] records, as well as reflecting on my own observations, his symptoms currently are preventing him from maintaining regular employment and are interfering with his ability to perform well in social situations at this time." (Tr. 563.)

"In addition to evidence from acceptable medical sources, the ALJ may also use evidence from 'other sources' including . . . therapists . . . and other non-medical sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ must provide germane reasons for rejecting the testimony of an "other source," such as Ms. Wolf. *Id.* (citing *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993)).

The ALJ gave little weight to Ms. Wolf's opinion because it "is not consistent with the normal mental status examinations." (Tr. 191-92, 407.)

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 13**

Moreover, the ALJ again stated that Plaintiff's own statements that he is "hardly ever alone" contradict Ms. Wolf's opinion. (Tr. 52.) Also, the record establishes that Plaintiff does hang out with his friends. In 2010, he complained that he was always getting sick because "all of [his] friends have kids in school," so he catches a new illness after he recovers from his current illness. (Tr. 442.)

The ALJ did not err because these are germane reasons for rejecting Ms. Wolf's opinion, and these reasons are supported by substantial evidence in the record.

### B. Evaluation of Plaintiff's Testimony

Plaintiff argues the ALJ erred in failing to provide valid reasons for rejecting his testimony. Plaintiff argues that just because he can complete some small chores around the house and make trips outside the house to attend appointments does not necessarily mean that he is not disabled or that he can engage in substantial gainful activity.

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Berry v. Astrue,* 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.") (internal quotation marks and citation omitted)). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 14**

specific, clear and convincing reasons for doing so." *Lingerfelter,* 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry,* 622 F.3d at 1234 (internal quotation marks and citation omitted); *see also Lester,* 81 F.3d at 834; *Dodrill*, 12 F.3d at 918. In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

The ALJ determined in step two of the sequential process that Plaintiff suffered from severe impairments.  (Tr. 12.) This finding satisfies the first part of the two-step analysis.

He also gave several reasons for failing to fully credit Plaintiff's testimony. He noted that (1) Plaintiff had no problems taking care of his young son, whom he saw weekly (Tr. 20,21, 191), (2) Plaintiff reported in 2009 he is capable of a variety of daily tasks and activities (Tr. 20, 126-33), (3) Plaintiff was able to take a vacation despite the claim that he is afraid to go far from home (Tr. 20, 449) and (4) Plaintiff's reported social activities indicated positive interactions with persons (Tr. 20, 52).

The ALJ did not err in not fully crediting Plaintiff's testimony due to the stated inconsistencies in Plaintiff's testimony. These inconsistencies, along with accepted medical opinions, allow the ALJ to properly give little weight to Plaintiff's subjective complaints of pain. (Tr. 191-92, 407.)

## C. Whether Plaintiff's Impairment Meets a Listing

Plaintiff argues that the ALJ erred in not finding that Plaintiff's pseudo seizures and mental impairments met or equaled a Listing. Plaintiff did not explain how his impairments meet or equals a particular listing. Instead, he argues generally that the opinions of Dr. Keyser, Dr. Goodwin, and Ms. Wolf provide support for finding that he meets a Listing.

In determining whether a claimant meets or equals a condition outlined in the "Listing of Impairments," the ALJ is required to evaluate the relevant evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet a listing. *Id.* Epilepsy is a listed impairment evaluated according to the type, frequency, duration, and after-effect of seizures. 20 C.F.R. Pt. 404, Subpt. P, App. 1. "At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack and postictal phenomena." *Id*. at §11.00.

In order to meet or equal Listings 12.04 (Affective Disorder) and 12.06 (Anxiety-related Disorders), Paragraph B criteria requires that the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social function; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. §§ 12.04B; 12.06B. The ALJ found that Plaintiff has mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace, and no episodes of decompensation with extended duration. (Tr. 13.) This conclusion is supported by substantial evidence in the record.

Plaintiff has not met his burden of showing that he met the Listing for Epilepsy or Listings 12.04, 12.06.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 16**

Plaintiff also argues the ALJ would have found Plaintiff's impairments met or equaled a Listing if the above disputed medical and nonmedical opinions were properly credited. However, as set forth above, the ALJ gave specific and legitimate reasons for giving the opinions less weight. (Tr. 20-22.)

Plaintiff also argues the ALJ should have obtained the opinion of a medical expert to more fully develop the record with respect to Plaintiff's mental problems. The ALJ has a special duty to fully and fairly develop the record. *Webb v. Barnhart,* 43 F.3d 683, 687 (9th Cir. 2005). Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert. *See* 20 C.F.R. §§ 404.1519a, 416.919a; *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001). Here, the ALJ did not state, nor does the record reflect, that the medical evidence was ambiguous or that the record was otherwise inadequate to allow for proper evaluation of Plaintiff's disability. As such, it was not necessary for the ALJ to consult a medical expert. The ALJ did not err by not obtaining the opinion of a medical expert regarding Plaintiff's pseudo seizure and mental problems.

### D. Plaintiff's Fiancée's Testimony

Plaintiff argues the ALJ did not give reasons germane for rejecting the testimony of Plaintiff's fiancée, Kimberly Davis. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony is competent evidence and cannot be disregarded without comment. *Id.* at 1053 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996)). To discount lay witness testimony, the ALJ must give reasons germane to each witness. *Bruce,* 557 F.3d at 1115; *Stout,* 454 F.3d at 1053; *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account,

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 17**

unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

The ALJ stated that "[f]ull consideration was given to the testimony of claimant's fiancée." (Tr. 20.) During such consideration, however, the ALJ found that her statements were inconsistent with Plaintiff's statement that he is capable of doing household chores. *Id.* The ALJ did not err in finding Ms. Davis' testimony lacked credibility.

### E. The ALJ's Residual Functional Capacity Assessment

Plaintiff argues the ALJ erred in assessing his residual functional capacity ("RFC"). This argument first assumes the opinions of Dr. Keyser, Dr. Goodwin, and Ms. Davis were not properly discounted. However, the Court has determined the ALJ properly evaluated the medical and nonmedical opinion evidence. Plaintiff also argues "it is unclear whether the Vocational Expert fully had in mind the restrictions of occasional overhead restrictions with the left extremity." The record shows, however, that the ALJ did include occasional overhead restrictions in his hypothetical of a person capable of medium work. (Tr. 61) This Court will affirm the ALJ's determination of a plaintiff's RFC if the ALJ applied the proper legal standard and the decision is supported by substantial evidence. *Morgan*, 169 F.3d at 599. Therefore, because the ALJ's RFC assessment included only those limitations supported by substantial evidence, his decision was free of legal error.

## VIII. Conclusion

Having reviewed the record in its entirety, and the ALJ's conclusions, the Court finds the ALJ's decision is free of legal error and supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17 is **DENIED.**
2. Defendant's Motion for Summary Judgment, ECF No. 19 is **GRANTED.**

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 18**

3.  The Commissioner's decision denying Plaintiff benefits is **AFFIRMED**.

4.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 11th day of December, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 19**